Ernst H. Rosenberger, J.
The petitioner is currently an inmate of the New York City Correctional Institution for Men, "Me has brought an article 78 proceeding seeking a judgment restoring to him 85 days’ good behavior time revoked as a result of nine disciplinary proceedings conducted at that" institution.
The record shows many instances of failure to accord petitioner due process. The most glaring example was the failure on the part of respondent to provide petitioner with published rules of the New York 'City Department of Correction or the New York 'City Correctional Institution for Men, other than those posted on the walls and set forth in the appendix hereto. *618 Therefore petitioner was never informed of the acts which constitute disciplinary infractions and the penalties which may be imposed for said acts. • Petitioner should have been provided with a comprehensive statement of what conduct is forbidden at Bikers Island and what sanctions can be imposed for infractions.[1] The failure to promulgate written rules and make them readily and easily available to the inmate population clearly constitutes a denial of minimal due process. (Rhem v. McGrath, 326 F. Supp. 681.)
Other jurisdictions have recognized this right to published rules, which we hold is part of the notice phase of due process. Notice must be proper before anyone can consider whether the hearing phase of due process is adequate. Notice does not only mean written notice of the charges (which was not given here) but it encompasses prior notice of what acts are prohibited. The United States District Court for the Eastern District of Virginia found that ‘ ‘ the existence of some reasonably definite rule is a prerequisite to prison discipline of any substantial sort.Begulations must in addition be distributed, posted, or otherwise made available in writing to inmates.” (Lanman v. Royster, 333 F. Supp. 621, 656 [1971].) Accord Sinclair v. Henderson (331 F. Supp. 1123, 1127 [E. D. La., 1971]); Inmate 24394 v. Schoen (363 F. Supp. 683, 688 [D. Minn., 1973] consent decree); Crowe v. Erickson (D.S.D., Aug. 24, 1973); Goldsby v. Carnes (365 F. Supp. 395 [W.D. Mo., 1973] consent decree); Bishop v. Lamb (D. Nev., Aug. 24, 1978).
In this case, where the rules were in fact, not published, and according to the testimony of Warden Cunningham, with the exception of those set forth in the appendix, did not exist in writing, petitioner had no way of knowing which acts were prohibited and might result in his punishment.[2]
To make notice further defective, petitioner was also not provided with written notice of the charges in advance of each •hearing. This right in prison disciplinary hearings has already been establshed. (Landman v. Royster, 333 F. Supp. 621; *619 United States ex rel. Miller v. Twomey, 479 F. 2d 701, 716; Sinclair v. Henderson, 331 F. Supp. 1123, 1129; Clutchette v. Procunier, 328 F. Supp. 767, 782; Sands v. Wainright, 357 F. Supp. 1062; Collins v. Hancock, 354 F. Supp. 1253; Crowe v. Erickson [D.S.D., Aug. 24, 1973, supra]; Bishop v. Lamb, [D. Nev., Aug. 24, 1973, supra]; Inmates of the Milwaukee County Jail v. Petersen, 353 F. Supp. 1157, 1167; Obadele v. McAdory [S.D. Miss., Jan. 19, 1973]; Workman v. Kleindienst [W.D. Wash., July 20, 1973]; Johnson v. Lark, 365 F. Supp. 289; see, also, Inmate 24394 v. Schoen, 363 F. Supp. 683, 684 [consent decree]; Bundy v. Cannon, 328 F. Supp. 165, 175 [consent decree]; Morris v. Travisono, 310 F. Supp. 857, 872 [consent decree]; Inmates of Maine State Prison v. Mullaney [D.Me., Jan. 4, 1973] [consent decree].)
Written notice has the twofold purpose of allowing a prisoner to prepare his defense and also that of keeping the hearing within proper bounds. Where the notice is oral, such as in this case, there is too great' a danger that the hearing will be enlarged to include material beyond the scope of the original charge. Supplying such written notice to inmates cannot constitute an undue burden to respondent, since charges and specifications are prepared, in writing, in advance of hearings.
Minimum .standards of due process apply to a prisoner in a case of forfeiture of good time. (Workman v. Kleindienst, W. D. Wash., July 20, 1973, supra; Morrissey v. Brewer, 408 U. S. 471; Gagnon v. Scarpelli, 411 U. S. 778.)
Certainly petitioner was not afforded due process in the taking away of 85 days of good time without having proper notice in the broad due process sense of the term.
If we can assume that Bones committed acts inimical to his fellow prisoners and to the staff of the institution, it may well be that, if he had been advised as to what was prohibited, there is some chance that he might have refrained from such conduct. If he did not in fact refrain he could have been punished for violating written standards and would have had no due process complaint. By failing to follow proper procedures, respondent may well have .been remiss in his duty to safeguard the health and welfare of other inmates and institutional staff. The other inmates have a right to personal security against unlawful invasion (Coffin v. Reichard, 143 F. 2d 443, 445, cert. den. 325 U. S. 887).
The record shows that confrontation and cross-examination would have been more than helpful in determining the facts in several of the infraction hearings here involved. The procedure, *620 in each instance, was that the direct case consisted of the written statement, often minimal, of the complaining and investigating officers. In an instance where the complaining officer was a superior officer, there was no investigation ,by another officer. It is clear that the board members simply accepted the officers’ statements: in some instances because the hearing officer personally knew the complaining officer to be a “ good officer”; in others, because the officer had a good reputation.
The right to confront and cross-examine adverse witnesses is so basic that extended discussion is not necessary. Mr. Chief Justice Warren' wrote in Greene v. McElroy (360 U. S. 474, 496-497): “ Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government’s case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of1 confrontation and cross-examination * * * This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases * * * but also in all types of cases where administrative and regulatory actions were under scrutiny.”
The necessity for cross-examination and confrontation is no less in the context of a prison disciplinary hearing and in recent years numerous courts have found this safeguard indispensable. (McDonnell v. Wolff, 483 F. 2d 1059, 1063; Sands v. Wainright, 357 F. Supp. 1062, 1087-1088; Bundy v. Cannon, 328 F. Supp. 165, 176 [consent decree]; Colligan v. United States, 349 F. Supp. 1233, 1238; Clutchette v. Procunier, 328 F. Supp. 767, 779; Rinehart v. Brewer, 360 F. Supp. 105, 115; Worley v. Bounds, 355 F. Supp. 115, 122; Landman v. Royster, 333 F. Supp. 621, 653; Collins v. Hancock, 364 F. Supp. 1253; Inmates of Maine State Prison v. Mullaney, D. Me., Jan. 4,1973 [consent decree]; Crowe v. Erickson D.S.D., Aug. 24, 1973; Batchelder v. Geary [N.D. Cal., April 16, 1973]; Bishop v. Lamb [D. Nev., Aug. 24, 1973]; Workman v. Kleindeinst [D. Wash., July 20, 1973]; Inmate 24394 v. Schoen, 363 F. Supp. 683, 687 [consent decree]; Johnson v. Lark, 365 F. Supp. 289; Matter of Lamb, *621 34 Ohio App. 2d 85; see, also, Jacob, Prison Discipline and Inmate Bights, 5 Harv. Civ. Rights, Civ. Liberties L. Rev. 227, 276 (1970); Millemann, Prison Disciplinary Hearings and Procedural Due Process — the Bequirement of a Full Administrative Hearing, 31 Md. L, Bev. 27, 51 [1971]; Brant, Prison Disciplinary Procedures: Creating Buies, 21 Clev. St. L. Rev. 83, 91-93 [May, 1972].)
While there may be problems in permitting inmates to cross-examine officers, these do not rise to the level that this essential element of securing truth and finding facts should be eliminated. The failure to afford confrontation and cross-examination to petitioner was a denial of due process.
On the issue of witnesses it appears from the record that petitioner’s failure to call witnesses on his behalf lies largely with himself. He was in each instance advised of his rights in this regard but did'not avail himself of them.
It is clear that the aid of counsel or counsel .substitute would be helpful in infraction hearings, particularly in cases where, as here, the institutional infractions might also constitute violations of criminal law. .Such a right may well exist for prison inmates at infraction hearings. It would seem peculiar, at best, that counsel is required in cases where there is to be any deprivation of liberty by court action and no counsel required where 85 days of liberty are forfeited by administrative action (Argersinger v. Hamlin, 407 U. S. 25). However, we do not reach that question in this decision.
Several of the. infractions here in question involved alleged violations of the Penal Law. The petitioner has in fact been indicted and is awaiting trial in Supreme Court, Bronx County.
Some advice in regard to use immunity should have been given to petitioner. Perhaps if it had been given he would have felt more able to participate fully in the disciplinary hearings. At the start of each such proceeding the inmate should be told tjiat any statements made by him could not be used affirmatively against him in a subsequent criminal prosecution. (Fowler v. Vincent, 366 F. Supp. 1224.)
We find that the disciplinary board which heard the infractions was reasonably impartial insofar as such minimal impartiality may be reached within prison walls. No more is, at present, required. Each hearing was held .before a board which had one member on it. who was not an employee of the Department of Correction. That person was the mental health worker from outside of the department.
*622 The negative factor to be noted regarding the composition of the disciplinary boards ,was the inclusion of Dolores Vallelloseras on those four boards on which she participated. A reading of the court record indicates that although she may be very well qualified to perform her duties as caseworker, she does not understand the English language sufficiently to allow for her full participation in the decision making process. She was confused by the testimony and appeared to ¡base her decisions on that of her fellow board members.
We further find that, at a disciplinary hearing, detailed findings of fact are not required. It iwas enough that petitioner was specifically informed as to the recommendation of the board and for their reasons. Detailed findings are not warranted and would pose an unreasonable burden on respondent in view of the large number of such hearings held each year.
We further find that the 48-hour rule was not substantially adhered to. In three of the hearings there was a violation of the 48-hour rule. This is the .requirement that hearings are to be conducted within 48 hours following the commission of the alleged offenses (departmental rule 4.49[d] [1]). :
Mindful of the statement in Gagnon v. Scarpelli (411 U. S. 778, 788) that “ due process [in a correctional institute] is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed ”, we do not find that the due process requirements set forth in this decision would constitute such a sacrifice.
Bespondent in his brief has urged the propostion that the courts should not interfere in the professional expertise of correction ¡officials in the management of correctional institutions. We disagree. The courts and Judges have accepted the responsibility of sentencing people to correctional facilities. We should not seek to avoid the responsibility for what happens to inmates after we have sentenced them.
. “ The task is a delicate one for courts because of the sensitive and precarious nature of correctional institutions. Prison officials, facing complicated and combustible situations each day, must be free to make a wide range of decisions. Much must be left to their good faith and discretion * * * Time has proved, however, that blind deference to correctional officials does no real service to them. Judicial concern with procedural regularity has a direct bearing upon the maintenance of institutional order; the orderly care with which decisions are made by the prison authority is intimately related to the level of respect with which prisoners regard that authority. There is nothing *623 more corrosive to the fabric of1 a public institution such as a prison than a feeling among those ,whom it contains that they are being treated unfairly.” (Palmigiano v. Baxter, 487 F. 2d 1280, 1283.)
The relief requested :by the petitioner is granted and the respondent is to restore to petitioner the 85 days of good time revoked from him.
APPENDIX General Rules For All Inmates. Rise promptly at the first call in the morning, wash, dress and clean area around your bed. Before 7:30 a.m. count you are required to make your bed daily and clean off the top of your locker. When the signal is given to line up for the count, line up in columns of two, facing the front of the dormitory. No talking or horseplay during the count. Any time you are called to leave the dormitory with a group, line up at the gate, and depart in columns of two. Remain orderly while walking in the corridor. If you are on hold in — other than medical — or unassigned, you wdll be required to assit [sic] with the dormitory sanitation as directed by the 8-4 officer. No smoking in the corridor or on the stairs. All inmates will be in their beds and quiet at 10:00 p.m.. Showers are permitted until 9:30 p.m.. The officer will turn the television off at 9:30 p.m.. No inmates are permitted in the day room after that time unless the warden has given his permission to view a late television show. Do not throw anything out of the windows, nor hang things on the bars. Any destruction of city property or possesion [sic] of cut shoes, will result in disciplinary action. By Order of The Warden

. Respondent apparently violated the published “ Rules and Regulations and Manual of Procedure” of the Department of Correction promulgated in 1958 and submitted by counsel for respondent. Rule 4.15 requires that a manual of rules governing their conduct shall be issued to inmates.

. The confusion as to what conduct may constitute a violation of which unwritten rule is obviously not confined to inmates. The testimony of Mr. Alvarez, a member of one of the hearing boards which judged petitioner, shows that his understanding of what constitutes insubordination and what constitutes disrespect are very different and to be punished differently. . There was no such testimony from any other officials.