Daniel D. MATZ, Petitioner and Appellee,

v.

Winston SATRAN, Warden, North Dakota State Penitentiary, Respondent and Appellant.

Cr. No. 814.

Supreme Court of North Dakota.

Dec. 22, 1981.

Benjamin C. Pulkrabek, of Pulkrabek & Tuntland, Mandan, for petitioner and appellee.

Edwin F. Zuern, Sp. Asst. Atty. Gen., Bismarck, for respondent and appellant.

VANDE WALLE, Justice.

The warden of the State Penitentiary, Satran, appealed from an order of the district court releasing an inmate, Daniel Matz, on parole. We reverse.

In September of 1979 Matz was sentenced to two 4-year terms, three 1-year terms, and one 30-day term to be served concurrently at the State Penitentiary. In July of 1980 Matz was granted parole; November 6, 1981, was his scheduled release date. While serving his sentence Matz was accumulating good time pursuant to the statutory formula prescribed in Section 12–54.1–01(3), N.D.C.C.: seven days per month on a sentence of four years. In September of 1981, after a urine test revealed that Matz had been using marijuana, prison authorities revoked four months, or 28 days, of his good time. As a result of the test, Matz's

release date was delayed until December 4, 1981. Following unsuccessful administrative appeals, Matz sought relief in the district court "from the loss of good time."[1] Acting pro se, Matz alleged, inter alia, that his good time had been forfeited in violation of Section 12–54.1–02, N.D.C.C. The district court agreed and ordered Matz released on parole. We have granted Matz's motion for release on personal recognizance bond, pending disposition of this appeal.[2]

Under the statute at issue, the gravity of an inmate's misconduct determines the amount of good time that is forfeitable:

"... Rules violation or the refusal to work shall result in forfeiture of good conduct sentence reduction for the month in which the infraction or infractions occur. Serious rules infractions, *as defined by rule or regulation*, may result in forfeiture of all sentence reductions earned from the date of sentence to and including the month in which such infraction or infractions occur." [Emphasis added.] Sec. 12–54.1–02, N.D.C.C.

The focus of this controversy is the statutory requirement that "serious rules infractions" be defined by rule or regulation. The district court and Matz appear to be of the opinion that the statute can be satisfied only by specific rules which clearly define "serious rules infractions" as such and lucidly identify in print immediately following said definition the penalty for violation of such rules. Such perspicuous rules do not exist. Do the Penitentiary's existing rules and regulations meet the statutory requirement? We find that they do. The infraction of which Matz was found guilty is clearly defined in the Inmate Handbook as an act "prohibited in the institution" in that Section 203 forbids: "Possession, introduction, or use of any narcotics, narcotic

1. Matz initially filed a petition for a writ of habeas corpus in the district court. This was denied. He then sought habeas-corpus relief in this court. As the Uniform Post-Conviction Procedure Act has replaced the habeas-corpus statutes, in these circumstances, we remanded the case for consideration under that Act. See, generally, *Smith v. Satran*, 295 N.W.2d 118 (N.D.1980).

2. After this appeal was filed, we granted a stay of the district court's order. Matz then filed motions requesting us to suspend our rules, dismiss the appeal, and vacate the stay. Matz has since abandoned these motions.

paraphernalia, drugs, or intoxicants not prescribed for the individual by the medical staff." In addition, the seriousness of the infraction is attested to by the fact that the possession of any controlled substance by a Penitentiary inmate is specifically proscribed as a Class B felony. Sec. 12–47–21(4), N.D.C.C. A further provision in the handbook, entitled "Serious Offenses," states: "Inmates who commit serious offenses while confined at the Penitentiary, i.e., assault, arson, attempted escape, or any other serious act may be prosecuted before the 4th District Court, Burleigh County, North Dakota."[3] The handbook also identifies "the withholding or forfeiture of good time" as a disciplinary action which may be taken as a "result of violation of the rules of the institution." We think that these rules and regulations of the Penitentiary, in conjunction with pertinent statutes, adequately apprised the inmates of the fact that the use of unprescribed drugs is a "serious rules infraction" which may result in the forfeiture of more than one month's good time.

Does the forfeiture of Matz's good time, under the regulations and statutes discussed above, comport with the Due Process Clause?

In *Wolff v. McDonnell*, 418·U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court held that a State-created right to good-time credits which could be forfeited for only serious misbehavior is a valuable liberty interest protected by the Due Process Clause. In addition to advance written notice of the claimed violation and other minimum procedures that must be followed[4] before a prisoner's good time may be revoked [see *Wolff, supra*, 418 U.S. at 558–572, 94 S.Ct. at 2976–2982, 41 L.Ed.2d at 952–960], the Due Process Clause requires prior notice of the prohibited acts which may result in the loss of good time. Many courts have held that the Due Process Clause requires written rules as a prerequisite to the forfeiture of good time for failure to comply therewith. See *State ex rel. Gillespie v. Kendrick*, 265 S.E.2d 537, 540–542 (W.Va.1980); *Bones v. Warden*, 77 Misc.2d 617, 352 N.Y.S.2d 119, 121 (1974). The rules must be written with reasonable specificity so that the inmate has fair warning to conform. They must describe the punishable conduct with reasonable precision. See, generally, *Battle v. Anderson*, 376 F.Supp. 402, 421 (E.D.Okla. 1974); *Landman v. Royster*, 333 F.Supp. 621, 654–656 (E.D.Va.1971); *Sinclair v. Henderson*, 331 F.Supp. 1123, 1129 (E.D.La. 1974).

In the prison context, the requirement of reasonably precise rules is not an empty formality; notice of behavioral standards enhances the inmate's sense of fair play and reduces the risk of arbitrary administration. Moreover, equal treatment of similar conduct is more certain with fixed rules. *Landman, supra*, 333 F.Supp. at 655.

The existing rules of the Penitentiary barely pass constitutional muster. While the rules are sufficient to warn the inmate that the unauthorized use of drugs is a "serious rules infraction," the Penitentiary officials should, in the immediate future, promulgate a set of rules which specifically govern the forfeiture of good time.

The trial judge ordered that Matz be released on November 27, 1981. We then granted the warden's motion to stay the order. As a result, Matz was not released from the Penitentiary until December 1, 1981, the day we granted his motion for release on bond. Had this lawsuit not been instituted, Matz would have been released on parole on December 4, 1981. We reverse the order of the district court but decline to order Matz back to the Penitentiary to serve the remaining two days of his sentence. The ordinary purposes of punish-

---

**3.** In holding that this provision failed to satisfy the statutory requirement the district judge reasoned: "[T]he reference to serious offenses . . . simply says that inmates who commit serious offenses *may be* prosecuted in the district court. The handbook does not suggest, infer- entially or otherwise, that a serious rule violation *is* any act which can be prosecuted in the district court." [Emphasis in original.]

**4.** There is no question raised concerning the propriety of the procedures followed here.

ment—vindication of society's norms, rehabilitation, and protection of the public—are not likely to be furthered by such a brief stay in the Penitentiary. Our decision approving the forfeiture of good time should have a deterrent influence on the other inmates; any additional deterrence that might be gained by ordering two days of detention is outweighed by the administrative burdens such confinement would cause. We note that Matz's release is not unconditional. He has been released on parole and is subject to the continuing supervision of the parole board.

Our previous order of December 1, 1981, that Matz be released from the Penitentiary on the condition that if we reversed the decision of the district court Matz be required to return to the Penitentiary to serve the time he would have been required to serve had he not been released, is set aside.

The order of the district court is reversed and pursuant to this opinion Matz remains subject to the supervision of the State Parole Board.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.