Warner S. KELLY, Appellee,

v.

Crispus NIX, Warden, Iowa State Penitentiary, Appellant.

No. 68503.

Supreme Court of Iowa.

Jan. 19, 1983.

Thomas J. Miller, Atty. Gen. and Jonathan Golden and Bruce C. McDonald, Asst. Attys. Gen., for appellant.

C.J. Krogmeier, West Point, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

SCHULTZ, Justice.

This appeal arises from a district court decision upholding an inmate's challenge of his prison disciplinary proceedings. For the reasons discussed herein, we reverse and remand.

On November 20, 1981, Warner S. Kelly, who was then serving a ninety year sentence for second degree murder, received a disciplinary notice advising him that he was charged with violating the prison rule against assault. He was informed that he was accused of assaulting another inmate, one Calhoun, on November 14, 1981, while both men had been incarcerated in a medium security portion of the penitentiary. Kelly was placed in administrative segregation within the penitentiary, pending investigation by a prosecutor to determine whether criminal charges should be filed. On December 8 he appeared before a disciplinary committee and the committee learned that criminal prosecution would not be undertaken. On December 10 Kelly was found guilty of violating the prison rule. This finding resulted in a disposition of ten days solitary confinement, 180 days administrative segregation, removal from the medium security facility, and cancellation of good and honor time. Following an unsuccessful appeal to the warden, Kelly filed a petition for a writ of habeas corpus. The district court treated the petition as an application for postconviction relief and found that the prison authorities failed to follow the penitentiary rules. The court ruled that this failure was a violation of Kelly's rights of due process. Accordingly, it then reversed the decision of the disciplinary committee, vacated Kelly's punishment, and ordered his records expunged of any reference to the incident.

On appeal the warden urges two arguments. First, he argues that the court improperly characterized Kelly's petition for a writ of habeas corpus as an application for postconviction relief. Kelly's challenge to prison rules cannot be determined in a habeas corpus proceeding. The warden contends that since the petition should not have been recharacterized, the court lacked

subject matter jurisdiction to rule on Kelly's lawsuit and the lawsuit should have been dismissed. Second, the warden argues that because prison authorities substantially complied with the prison disciplinary rules, the trial court erred in ruling that Kelly was deprived of his due process rights. Thus, he argues, the court should not have reversed the disciplinary committee's finding of a rule violation, nor should it have required expungement of the records.

We find that the court acted properly by treating Kelly's petition as an application for postconviction relief. However, we determine that Kelly was afforded due process in the disciplinary proceedings and we find sufficient proof that Kelly violated a prison rule. Consequently, we reverse and remand for reinstatement of the decision of the disciplinary committee.

I. *Subject matter jurisdiction.* Challenges to good or honor time forfeitures have been formerly undertaken by writ of habeas corpus. *Allen v. State,* 217 N.W.2d 528, 531 (Iowa 1974). However, it has been the law since July 1, 1981, that such challenges are to be brought exclusively through the postconviction statute, chapter 663A of the 1981 Iowa Code, as amended. 1981 Iowa Acts ch. 198, §§ 1 and 2.

Kelly, acting pro se, encaptioned his pleading "Petition for a writ of Habeas Corpus." Although counsel was subsequently appointed for him, the pleading was not amended before the matter came to trial on April 12, 1982. At the close of Kelly's evidence, the warden moved for a directed verdict on the ground that the court did not have subject matter jurisdiction to consider Kelly's pleading since it had not been brought in the context of postconviction relief.[1] The trial court overruled the motion and treated the pleading as an application for postconviction relief.

▬ Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which a particular proceeding belongs. *Matter of Estate of Dull,*

303 N.W.2d 402, 406 (Iowa 1981); *City of Clinton v. Owners of Property,* 191 N.W.2d 671, 677 (Iowa 1971). The district court has the power to hear and determine questions arising from the forfeiture of the reduction of sentence for honor time. 1981 Iowa Acts ch. 198, §§ 1 and 2.

▬ Where jurisdiction of the subject matter exists, a mere insufficiency of the pleadings will not affect that jurisdiction. The gravamen of the warden's complaint is that the petition was wrongly labeled. It is well established, however, that "[t]he designation given a pleading is not of vital importance. Its character is to be determined largely by its allegations and legal effect, not solely from the name given it." *Rouse v. Rouse,* 174 N.W.2d 660, 664 (Iowa 1970), *quoted in Schulte v. Mauer,* 219 N.W.2d 496, 502 (Iowa 1974). A review of the petition in question shows that although Kelly designated it as an application for a writ of habeas corpus, the entire content of the petition and the claim for relief were posited on facts and claimed illegalities that cost him his good or honor time. The court did not modify the character of the proceeding, but simply treated it for what it was, a postconviction relief proceeding. Thus, we conclude that the defects in the petition do not deprive this court of subject matter jurisdiction.

II. *Procedural rules.* Also at issue in this appeal is the correctness of the district court's interpretation and application of penitentiary rules concerning the discipline and control of inmates. These rules, termed rule 804, were developed by prison authorities pursuant to the mandate of the federal district court. That court determined that rule 804 provided adequate procedural due process for prisoners; it permanently enjoined prison authorities from conducting prison disciplinary proceedings in contravention of the rule.

Generally, rule 804 provides procedural rules for disciplinary proceedings relating to (1) procedures for determining alleged violations of disciplinary rules, and (2) pro-

---

1. As this was a nonjury action, the motion should have been labeled as a motion to dismiss. Iowa R.Civ.P. 216; *Wernimont v. State,* 312 N.W.2d 568, 570 (Iowa 1981).

cedures for preliminary investigation of cases referred to the prosecutor for possible criminal prosecution. The rule contains provisions concerning the initial status of the inmate, notice, investigation, hearings, determination, disposition, appeal, and procedures for imposing emergency restrictions on the inmate. Rule 804 also provides that in the event a rule violation is not adjudicated in accordance with the designated procedure, no punishment may be imposed on the inmate for the rule violation and the records must be expunged. These provisions were in effect when the events leading to this appeal occurred. They have subsequently been clarified by the federal district court.

With this general background, we now examine Kelly's claim that his punishment for violating a rule was illegal because the prison authorities did not comply with rule 804 in both the prehearing and hearing stages. He contends that the rule violations are based on the following: (1) prehearing procedure concerning an untimely report, (2) improprieties concerning his administrative segregation, and (3) deficiencies in the hearing. The district court found, after an evidentiary hearing, that there was a timely report and we agree with this finding. The district court also found a violation of rule 804's administrative segregation rules and, therefore, reversed the decision of the prison disciplinary committee and ordered that Kelly's records be expunged. We will examine both the administrative segregation rules and the application of these rules to the facts as we find them.

A. *Administrative segregation.* The appropriate procedure for segregation of an inmate who is charged with a rule violation and is also subject to criminal prosecution is found in 804D(1) which in pertinent part provides:

(c) ... First, where no immediate disciplinary action is taken, the institution must investigate the matter to determine whether there is good cause to believe the report is true as written and that restriction is necessary. A designated higher official should review the incident report and attempt to verify, to the extent possible, the report. . . .

(d) The inmate shall be notified within 48 hours that there is an incident report on file which indicates that one or more of the grounds for emergency restriction exists, that the report has been reviewed by the designated higher official, that there is or is not good cause to believe that the report is true, and that his status will or will not be continued pending investigation for possible criminal prosecution.

. . . .

(f) An inmate may not be retained in a restricted status without a hearing for more than 30 days after referral to the County Attorney or other prosecuting authority, unless the County Attorney or other prosecuting authority has indicated his intent to pursue prosecution of the offense by filing an indictment or information.

(g) When the criminal justice authority makes a decision on whether or not to prosecute, the inmate shall be notified immediately of the decision and of the procedures and status which will follow.

The controlling issue in the trial court's ruling turned on the finding that the authorities did not comply with D(1)(d). We, too, find D(1)(d) to be the controlling section and will examine the facts to determine whether there was compliance with this section.

Prior to examining the facts, however, we must determine the standards of review involved in this case. Proceedings in postconviction relief are special proceedings treated as an action at law. The burden of proof is on the petitioners who must establish the facts by a preponderance of the evidence. *Stanford v. Iowa State Reformatory,* 279 N.W.2d 28, 31 (Iowa 1979). Where there are fundamental constitutional rights involved, we review the case de novo in light of the totality of the circumstances. *Fitchner v. Iowa State Penitentiary,* 285 N.W.2d 751, 752 (Iowa 1979).

In our de novo review we find that Kelly was placed in administrative segregation on November 20, 1981, and was given a prompt disciplinary notice signed by Stephen Korb, a staff member. The notice also contained a notation about Kelly's status: "Summary Segregation for up to thirty (30) days pending prosecutor's investigation." The notation was signed by Captain Cole, the shift supervisor. On the same date Kelly received a document entitled "Referral to Prosecuting Authority" which was signed by acting security director, Larry Moline. This notice indicated that Kelly's status was segregation for thirty days pending a prosecutor's investigation and that the nature of his offense was "Assault on an inmate (serious)." Attached to this document was a copy of the incident report. The trial court found that the prison authorities did not establish that this report was reviewed by a designated higher official. Thus, the prison authorities could not show that the official found good cause to believe the report was true and that he determined what Kelly's status would be while the investigation was pending.

■ It is apparent that the trial court placed the burden of proof on the warden. This was error, for administrative hearings are afforded a presumption of regularity and Kelly had the burden of establishing that the rules were not followed. *See Anstey v. Iowa State Commerce Commission,* 292 N.W.2d 380, 390 (Iowa 1980). This error is of no consequence, however, because even if there was no strict compliance our review of the evidence indicates that there was substantial compliance with the rule and Kelly was not prejudiced.

■ Kelly was notified within forty-eight hours that there was an incident report on file. He was told why he was being held and he could infer from the charge of assault on an inmate that he was being held for one of the grounds for emergency restriction which includes "that he was regarded as dangerous to others or otherwise a threat to the security and good order of the institution."

■ While there is no showing in the record that Moline was a "designated" higher official, the notice by the acting security director certainly indicates that a higher official did review the incident report Korb had made. Although the notice did not state explicitly that Moline found good cause for the report being true, this fact could be logically inferred from the referral to the prosecutor for consideration of criminal prosecution. We find these variances from the rule to be insubstantial.

■ We also find that Kelly was not prejudiced by these claimed defects and the summary segregation imposed. Kelly was not misled by the notices. He knew the charges against him. While Kelly was segregated before the hearing the investigating officer gave him the opportunity to name witnesses that he wanted to see. He named only one, the victim, Calhoun. The investigator did obtain a statement that Calhoun did not wish to testify. We find no facts to indicate that Kelly was prejudiced during the hearing by the administrative segregation. We conclude that the trial court was in error in reversing the decision of the disciplinary committee and applying the expungement rule for procedural defects in the administrative segregation.

■ Kelly argues, however, that substantial compliance with rule 804 is not sufficient. He contends that section E of the rule precludes punishment and requires expungement of the record if the section D(1)(d) rules have not been followed strictly. Section E provides:

> If an alleged rule violation is not adjudicated in accordance with the due process procedure set forth in this Section, no punishment may be imposed for such rule violation, and all records of the alleged violation, including the reporting officer's incident report shall be expunged from the inmate's treatment and legal files and from any other records which may be subject to review by the Board of Parole.

We find that section E of rule 804 does not require expungement of the record in all cases. We conclude that the prisoner's due process rights are not always violated

when prison authorities have not strictly complied with rule 804. An examination of the development and recent clarification of that rule leads us to our conclusion.

In 1974, the United States Supreme Court, recognizing that prisoners were entitled to rights under the due process clause of the Constitution, ruled that the minimum requirements of procedural due process appropriate for the circumstances must be observed in prison disciplinary proceedings involving the loss of good or honor time. *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935, 952 (1974).

Shortly thereafter, the federal district court reached a decision in a suit brought by an inmate against the warden of the Iowa State Penitentiary. *Kane v. Brewer,* Civ. No. 73–153–1 (S.D.Iowa 1974). Kane alleged that his procedural due process rights had been violated and the federal district court agreed. The court also reviewed rule 804, the penitentiary disciplinary procedure rules, which had been developed by prison authorities before 1974. The court determined that, with one exception, the rule provided adequate due process protection. After amendment of the rule by the prison authorities, the federal court reviewed the amended rule 804 and stated that the rule met the minimum constitutional standards of *Wolff v. McDonnell.* On November 5, 1974, the federal court permanently enjoined the prison authorities from conducting prison disciplinary proceedings in contravention of rule 804.

The prison authorities were dissatisfied with the status of rule 804 and filed a motion to amend the *Kane* decision. In particular, the prison authorities asked that section E be amended so that expungement would not be mandatory when deviations from rule 804 were not substantial.

On September 30, 1982, the federal district court issued an order to clarify its earlier order in *Kane.* It stated that in some instances rule 804 provides protection above and beyond the requirements of minimum due process. It then stated that when deviations are not substantial expungement is not necessary because "[t]he court believes that the title [of rule 804(E)] indicates an intent on the part of the drafters of Rule 804(E) that the provision would not apply to insubstantial and nonprejudicial violations of [Rule] 804." *Kane v. Brewer,* Civ. No. 73–153–1 (S.D.Iowa, September 30, 1982).

We agree with the federal district court's clarification. We find its assessment especially appropriate when the claimed rule violation concerns summary segregation rather than the disciplinary hearing. The rules that apply to the procedures of the disciplinary proceeding directly protect the integrity of the hearing. In contrast, segregation does not threaten the integrity of the adjudication of guilt or innocence unless it prevents the inmate from gaining access to the evidence.

At the time it ruled on Kelly's claims, the trial court was without the benefit of the federal district court's recent clarification of rule 804. Thus, it made no attempt to determine whether the deviations from the rule were insubstantial and nonprejudicial.

B. *Other complaints.* Because it had already ordered the record expunged, the district court did not address other complaints Kelly made concerning alleged violations of the hearing rules. Specifically, Kelly indicated he was subjected to rule violations as follows: (1) the disciplinary committee's reliance upon a confidential informant denied Kelly the right to confrontation, (2) the informant was never determined to be reliable, and (3) the disciplinary procedure, which requires a defendant to make a statement while he is being referred for prosecution, unconstitutionally denied petitioner his fifth amendment rights. Kelly also claimed that no rule infraction was established, because inmate Calhoun refused to make a statement and, therefore, no rule infraction or crime could be established. We disagree with all of these claims.

We find that the events upon which Kelly bases his claims are largely undisputed. Kelly's hearing on the charge of prison rule violation began on December 8. On that date Kelly was informed that he was not to

be subject to criminal prosecution. He had been advised previously in writing that his silence might be used against him in a disciplinary hearing. When questioned, he had denied the charges made against him, but refused to answer questions or make further statements.

That hearing was continued to December 10 because Kelly requested a statement from Calhoun. Calhoun had previously declined in writing to answer any questions and, when contacted, he declined orally and in writing to answer any questions, or give any evidence.

Kelly had been informed in writing on November 20 of the substance of the confidential informant's testimony. That testimony was secured by the prison investigator and was presented to the committee. Kelly was unable to learn the identity of the informant and he was not given the right to cross-examine him. The reason given for this denial was "for reason of security of the institution." The committee found the confidential information to be reliable and found Kelly guilty of the rule infraction.

This confidential information was introduced into evidence in the district court hearing and we have reviewed it on this appeal. Our review indicates that the evidence is reliable and that it substantiates the claim that Kelly violated the rule. The written report is a correct summary of the substance of the confidential evidence.

Rule 804C(9) gives the designated hearing authority the power to disallow the calling of witnesses when the safety of other inmates or the order of the institution would be threatened. However, the rule requires the authority to state in writing its reason for the refusal. Although the rule was followed in this case, we must examine the constitutionality of both this rule and the other procedures concerning the confidential informant.

■ In *Wolff v. McDonnell* the Supreme Court held that an inmate would normally be entitled to present witnesses and relevant documentary evidence; the Court also held, however, that there must be a balancing of the inmate's interest in avoiding loss of good time with the needs of the prison. The Court stated:

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.... Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments.

*Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980, 41 L.Ed.2d at 957. Upon review of the facts, we find that Kelly was not deprived of any constitutional right of due process by the use of a confidential informant or by the committee's refusal to call Calhoun as a witness. It is well established that confrontation and cross-examination are not required in prison disciplinary hearings. *Wolff,* 418 U.S. at 567, 94 S.Ct. at 2981, 41 L.Ed.2d at 957. Thus, we find no merit in Kelly's first complaint.

■ Kelly's second complaint concerns the sufficiency of the evidence in view of the refusal on the part of Calhoun to make a statement. We have reviewed the record and find there is substantial evidence to support the ruling of the disciplinary committee.

■ Nor do we find any merit in Kelly's third complaint, that he was required by the disciplinary procedures to make a statement. We surmise that Kelly's complaint is based on the written warning he received informing him that his silence may be used against him in the disciplinary hearing. In *Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976), the Supreme Court held that the fact that state prison authorities drew adverse inferences from a prisoner's silence at a disciplinary hearing did not of itself of-

fend the due process clause of the fifth amendment, even though such inference would be patently unconstitutional in a criminal context. Any inference that the committee used, even though it was unfavorable to Kelly, would not suffer from constitutional impediment. Moreover, the finding of the committee was not based on the inference alone; there was enough other evidence in the record to sustain its finding.

We conclude that the judgment of the district court should be reversed and the case remanded for an entry of an order restoring the decision of the disciplinary commission and withdrawing the order of expungement.

REVERSED AND REMANDED.