**Herbert O. JENSEN, Plaintiff and Appellant,**

v.

**Winston SATRAN, Warden, N.D. State Penitentiary, Defendant and Appellee.**

**Cr. No. 910.**

Supreme Court of North Dakota.

March 30, 1983.

Herbert O. Jensen, Bismarck, pro se.

Vincent LaQua, State's Atty., Fessenden, and Edwin F. Zuern, Sp. Asst. Atty. Gen., Bismarck, for defendant and appellee; argued by Zuern.

VANDE WALLE, Justice.

Herbert O. Jensen has appealed from an order of the district court of Wells County denying his application for post-conviction relief. We affirm.

On November 23, 1981, Jensen was involved in a fighting incident with another inmate in the recreation building at the State Penitentiary. Both inmates were immediately placed in disciplinary segregation. Approximately one hour later, Jensen received an incident report charging him with a violation of the penitentiary rule against fighting with another person and notifying him that he would be called before the penitentiary adjustment committee. Jensen was released from disciplinary segregation the next day and subsequently filed a grievance report concerning the incident.

On November 27, 1981, Jensen appeared before the penitentiary adjustment committee. On the basis of the information included in the incident report, Jensen's testimony, and the testimony of the penitentiary officer who had witnessed the incident, the adjustment committee determined that Jensen had violated prison rules by striking another inmate. For this violation the committee recommended that Jensen lose one month of good time, lose 30 days' gym privileges, and spend 15 days in disciplinary segregation with 10 days suspended if he did not commit any further infractions for 60 days. One day of credit was also given for the time Jensen spent in disciplinary segregation after the fighting incident.

The adjustment committee's recommendation was upheld in appeals by Jensen to the warden of the penitentiary and to the director of institutions. Jensen then petitioned for a writ of habeas corpus, which was denied by the district court and subsequently by this court. We determined that Jensen's request for relief should have been brought under the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D.C.C., rather than under the habeas corpus statutes. Following the dismissal of his petition for habeas corpus relief by the Federal courts for failure to exhaust State remedies, Jensen filed an application for post-conviction relief in State district court, alleging that the adjustment committee had disciplined him in violation of the penitentiary rules and regulations and in violation of the Fourteenth Amendment's Due Process Clause. The district court determined there had been no denial of due process to Jensen and denied his application for post-conviction relief. It is from the district court's order denying his application for post-conviction relief that Jensen has appealed.

Jensen alleges his due-process rights were violated because the disciplinary action was not conducted according to prison regulations. Specifically, Jensen claims the following violations occurred: (1) the incident report contained no list of witnesses and no statement of rights; (2) the disciplinary

hearing was not held within 72 hours after he was charged with fighting; (3) his request to call witnesses at the disciplinary hearing was denied and no reasons were given for this denial; (4) no determination was made by the warden regarding his detention in disciplinary segregation prior to the adjustment committee hearing; (5) no written notice of the reasons for the disciplinary board's findings and disposition was given; and (6) the penalty imposed was in excess of the penalty listed for a rule violation in the prison recreation building.[1]

We have held that an institution which adopts rules by which discipline therein is to be maintained should conscientiously attempt to follow its own rules because where those rules are followed, respect for the law is enhanced, but where those rules are not followed, respect for the law is diminished. *Havener v. Glaser,* 251 N.W.2d 753 (N.D. 1977). In the prison context, the requirement of reasonably precise rules is not an empty formality; notice of behavioral standards enhances the inmate's sense of fair play and reduces the risk of arbitrary administration. *Matz v. Satran,* 313 N.W.2d 740 (N.D.1981). In the instant case, however, we do not believe Jensen's due-process rights were violated by any failure of penitentiary officials to follow institutional rules in the disciplinary proceedings.

■ "The touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935, 952 (1974). The right to statutory good-conduct sentence reduction, which can be forfeited for rules violation or the refusal to work, is a valuable liberty interest protected by the Due Process Clause. *Wolff v. McDonnell, supra; Matz v. Satran, supra; Havener v. Glaser, supra;* Sec. 12–54.1–02, N.D.C.C. In *Wolff v. McDonnell, supra,* the United States Supreme Court held that where an inmate's constitutionally protected interests are at stake, the Fourteenth Amendment's Due Process Clause requires the State prison's disciplinary proceedings to afford an inmate the following protections: (1) at least 24 hours' advance written notice of the claimed violation; (2) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the right to call witnesses and present documentary evidence in defense when to do so would not be unduly hazardous to institutional safety or correctional goals.

■ However, while the forfeiture of statutory good-time credits constitutes a valuable liberty interest protected by the Due Process Clause, the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement. *Hewitt v. Helms,* —— U.S. ——, ——, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). The question of whether or not prisoners are deprived of a "liberty" interest within the meaning of the Due Process Clause of the

---

1. The rules Jensen alleges the penitentiary failed to follow are listed at page 28 of the 1977 "Inmate's Handbook" under the heading "Inmate's Rights in the Disciplinary Process." Jensen alleges the following rules were violated:

 "2. Prompt and full nature of the alleged violation(s) will be given to inmates not later than five (5) days after the offense(s) except that an inmate placed in detention shall be notified within 24 hours of detention. The notice will contain the charge, full rule violation, incident description, witness(es), evidence, hearing date and statement of rights.
 "3. Disciplinary hearings shall be held as quickly as possible after inmate is charged and generally this time period will not exceed 72 hours.

. . . . .

 "5. The right to bring evidence and to request witness(es).

. . . . .

 "9. A determination by the Warden or Acting Warden of the need for detention prior to a disciplinary hearing will be made in all cases.
 "10. Written notice of Disciplinary Board findings, disposition, and reason for both."
 In response to our decision in *Matz v. Satran,* 313 N.W.2d 740 (N.D.1981), a revised Inmate Handbook was issued by the State Penitentiary in February 1982. The revised handbook more fully defines the inmate's rights in the disciplinary process and sets forth in greater detail the procedures to be followed in a penitentiary disciplinary proceeding.

Fourteenth Amendment as a result of prison action depends upon the nature of the loss to the prisoner. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Havener v. Glaser, supra.* Because the discipline recommended in the instant case included the forfeiture of statutory good time which has been held to be a protected liberty interest, we will subject this case to Due Process analysis, although in doing so we do not necessarily determine whether or not Jensen's confinement in disciplinary segregation and the loss of 30 days' gym privileges constitute sufficient deprivations of liberty to invoke due-process protection.

▪ Having determined that a protected liberty interest is involved, we must now decide whether the process afforded Jensen in disciplinary proceedings satisfied the minimum requirements of the Due Process Clause. The very nature of due process negates the concept of inflexible procedures universally applicable to every imaginable situation; instead, the requirements imposed by the Clause are flexible and variable and dependent upon the particular situation being examined. *Wolff v. McDonnell, supra; Hewitt v. Helms, supra.* In determining what process is due under the Fourteenth Amendment, we must consider the private interests at stake in a governmental decision, the governmental interests involved, and the value of procedural requirements. *Hewitt v. Helms, supra; Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

It has been repeatedly said that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. *Hewitt v. Helms, supra.* Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizens, a "retraction justified by the considerations underlying our penal system." *Hewitt v. Helms, supra,* —— U.S. at ——, 103 S.Ct. at 869; *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 1369 (1948). As the Supreme Court in *Wolff, supra,* stated:

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. Cf. *Morrissey v. Brewer,* 408 U.S. [471] at 488, 92 S.Ct. [2593] at 2603, [33 L.Ed.2d 484 at 498 (1972)]. In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." 418 U.S. at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.

In determining what is "due process" in the prison context, "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Hewitt v. Helms,* —— U.S. at ——, 103 S.Ct. at 872; *Wolff v. McDonnell, supra,* 418 U.S. at 560, 94 S.Ct. at 2977, 41 L.Ed.2d at 953. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." *Hewitt v. Helms, supra,* —— U.S. at ——, 103 S.Ct. at 872; *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 474 (1979). The administration of a prison is at best an extraordinarily difficult undertaking. *Hewitt v. Helms, supra,* —— U.S. at ——, 103 S.Ct. at 868; *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2980, 41 L.Ed.2d at 957. The safety of guards and inmates is perhaps the most fundamental responsibility of the prison administration. *Hewitt v. Helms, supra,* —— U.S. at ——, 103 S.Ct. at 872; *Bell v. Wolfish, supra,* 441 U.S. at 547, 99 S.Ct. at 1878, 60 L.Ed.2d at 474; *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629, 643 (1977); *Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 502 (1974); *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224, 235 (1974).

"Prison disciplinary proceedings, ... take place in a closed, tightly controlled envi-

ronment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. . . . Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner." *Wolff v. McDonnell,* 418 U.S. at 561–562, 94 S.Ct. at 2977, 41 L.Ed.2d at 954.

"In assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners *inter se,* and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents." *Hewitt v. Helms,* —— U.S. at ——, 103 S.Ct. at 872–73.

It is against this background that disciplinary proceedings must be structured and it is against this background that we must make our constitutional judgments. In doing so, we refuse to encase the penitentiary disciplinary procedures in an "inflexible constitutional straightjacket" which would very likely raise the level of confrontation between staff and inmate and hamper efforts to maintain an acceptable level of security and safety in the institution. *Wolff v. McDonnell,* 418 U.S. at 563, 94 S.Ct. at 2978, 41 L.Ed.2d at 955.

Jensen claims he was denied due process because the incident report did not include a list of witnesses and a statement of rights in accordance with Right No. 2 of the Inmate's Rights in the Disciplinary Process. Jensen does not, however, claim that he was

unaware of his rights or of the potential witnesses, nor does he state how the omission of a list of witnesses and a statement of rights on the incident report denied him due process.

■ We do not believe Jensen's due-process rights were violated due to the absence of a witness list on the incident report. *Wolff v. McDonnell, supra,* required that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. The incident report in the instant case adequately informed Jensen that he was charged with violating the prison rule against fighting with another inmate. Although the incident report form provided no separate space for a list of witnesses, the name of the gym officer wo witnessed the incident and his description of the incident appear on the report. The gym officer was the only witness called by the penitentiary adjustment committee to testify against Jensen. Under these circumstances, the incident report was sufficient to inform Jensen that the gym officer would be a witness at the disciplinary hearing, so as to enable him to properly prepare his defense. Deviations from an administrative segregation rule of a state penitentiary do not require expungement of an inmate's disciplinary record when those deviations are insubstantial and nonprejudicial. *Kelly v. Nix,* 329 N.W.2d 287 (Iowa 1983). Prisoners' due-process rights are not always violated when prison authorities have not strictly complied with disciplinary rules, so long as the inmate is not prejudiced by substantial compliance. *Kelly v. Nix, supra.*

■ We also disagree with the allegation that Jensen's due-process rights were violated because the incident report did not include a statement of rights. In addition to notifying Jensen of the charge against him, the incident report informed Jensen of his right to not be called before the adjustment committee until at least 24 hours after receiving notice of the alleged violation. According to *Wolff, supra,* due process requires that a minimum period of 24 hours

must be allowed to the inmate to prepare for the appearance before the adjustment committee. Jensen was further apprised of his rights in the disciplinary process by the "Inmate Handbook," a copy of which is given to each incoming inmate. Under these facts, Jensen cannot claim a denial of due process for being inadequately informed of his rights.

Jensen's next contention is that his due-process rights were violated because the disciplinary hearing was not held within 72 hours after he was charged with fighting. *Wolff, supra,* requires that an inmate must be given at least 24 hours after being charged with a rule violation before appearing before the penitentiary adjustment committee. This ensures the inmate a minimum amount of time to marshal the facts and prepare a defense.

 The penitentiary rule in effect in November 1981 required that "[d]isciplinary hearings shall be held as quickly as possible after inmate is charged and *generally* this time period will not exceed 72 hours." [2] [Emphasis added.] Jensen was charged with the rule violation at approximately 9 p.m. on November 23, 1981. He appeared before the penitentiary adjustment committee sometime during the day of November 27, 1981, less than 24 hours in excess of the 72-hour period after he was charged. Jensen does not claim that he was in any way prejudiced by this delay, nor is there any indication of possible prejudice in the record. Accordingly, we do not believe Jensen's due-process rights were violated by having his disciplinary hearing more than 72 hours after being charged with a rules violation. *Kelly v. Nix, supra.*

Jensen contends that he was denied due process because his request to call witnesses at the disciplinary hearing was denied and no reasons were given for the denial. All the testimony at the adjustment committee hearing was supplied by the prison gym officer who witnessed the incident and by Jensen, who admitted striking another inmate. Jensen's request to call three fellow inmates to testify on his behalf was denied.

Jensen claims his witnesses would have testified that Jensen had been harassed on previous occasions by the other inmate involved in the altercation and that the other inmate had provoked Jensen's attack on the occasion in question.

Although the incident report contains no statement of reasons for the refusal to call Jensen's witnesses, the State argues that it was unnecessary to call these witnesses because Jensen admitted that he had violated prison rules by striking another inmate. Furthermore, the State claims that any testimony of provocation which would have been offered by the witnesses had they been called was taken into consideration by the adjustment committee when it suspended 10 days of the 15 days Jensen was sentenced to spend in disciplinary segregation.

The issue of an inmate's right to call witnesses at a disciplinary hearing was addressed by the United States Supreme Court in *Wolff v. McDonnell, supra,* 418 U.S. at 566, 567, 94 S.Ct. at 2979, 2980, 41 L.Ed.2d at 956, 957, as follows:

"We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.... [B]ut the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators.... [H]ere we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of

2. "Inmate's Rights in the Disciplinary Process" No. 3. See footnote 1.

reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents."

■■ Although written reasons for refusing to call a witness would be "useful," the Court in *Wolff* did not require written reasons for denying inmates the limited right to call witnesses in their defense. *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976). However, the broad discretion of prison officials in refusing to call an inmate's witnesses is not unbounded. Due process requires that such a decision cannot be arbitrarily made. *Wolff, supra.* Although a written statement of the reasons for the denial of a request for witnesses need not be given, some support for the denial of a request for witnesses must appear in the record. This will enable a court to make limited inquiry into whether or not the broad discretion of prison officials has been arbitrarily exercised. *Hayes v. Walker,* 555 F.2d 625 (7th Cir.1977).

■ The record in the instant case, although scant in this regard, is sufficient to reflect that the prison officials did not act arbitrarily in refusing to call Jensen's witnesses. This is not a case in which the testimony of the prison official and the disciplinary defendant is in conflict. Jensen admitted striking another inmate in violation of penitentiary rules. His witnesses apparently would have testified as to possible provocation for Jensen's conduct. Because Jensen admitted the rules violation, the testimony of his witnesses would not have affected the adjustment committee's finding that Jensen committed the prohibited act as charged, but instead could only have affected the determination of the punishment to be imposed for the fighting violation. The State contends that the adjustment committee considered the possibility of provocation when it suspended 10 days of the 15 days Jensen was to spend in disciplinary segregation.

■ Jensen's due-process rights were not infringed because it was within the discretion of the adjustment committee to refuse to call Jensen's witnesses in order to keep the hearing within reasonable limits and to prevent disruption and interference with the efficient carrying-out of the inmate disciplinary process which may be essential to the correctional program of the institution. *Wolff v. McDonnell, supra.* Even though we conclude that a written statement of reasons for refusal to call an inmate's witnesses is unnecessary in the instant case, such a statement is useful and would be beneficial in future cases.

Jensen next alleges that his due-process rights were violated because no determination was made by the warden regarding his detention in disciplinary segregation prior to the adjustment committee hearing. Jensen was confined in disciplinary segregation overnight on November 23, 1981, immediately following the fighting incident. He claims this violated Right No. 9 of the Inmate's Rights in the Disciplinary Process.[3]

**3.** The problem caused by the wording of this rule in the instant case should not recur in future cases because of revisions in the 1982

Inmate Handbook. The revised handbook provides for pre-hearing detention in situations where the inmate's presence poses a threat to

The warden is responsible for the policing of the penitentiary and the discipline of the inmates. Sec. 12–47–11, N.D.C.C. Under the directive of the warden, all necessary means shall be used to maintain order in the penitentiary, enforce obedience, suppress insurrection, and prevent escapes. Sec. 12–47–23, N.D.C.C. Whenever any inmate of the penitentiary attempts to do injury to any other person, any officer or guard may use reasonable means to enforce the observance of discipline. Sec. 12–47–24, N.D.C.C.

 Segregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protection is not justified by apprehended emergency conditions. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). However, "[i]n situations such as the present, where prison authorities are allegedly reacting to emergency situations in an effort to preserve the safety and integrity of the institution, the state's interest in decisive action clearly outweighs the inmate's interest in a prior procedural safeguard." *Hayes v. Walker, supra,* 555 F.2d at 633.

 The use of physical violence by an inmate, notwithstanding possible provocation by another inmate, in the volatile atmosphere of a prison cannot be tolerated under any circumstances. Violence between inmates must be promptly dealt with before it has an opportunity to escalate. Although the record does not indicate that the warden or acting warden personally determined the need for Jensen's overnight confinement in disciplinary segregation following the fighting incident, such authorization must be reasonably implied in situations such as are presented by the instant case where concern for institutional security and safety was the basis for immediate segregation of the inmate. Under the facts presented in this case, and in light of the applicable statutes and penitentiary rules, Jensen's overnight confinement in discipli-

nary segregation immediately following the fighting incident did not violate due process. *Kelly v. Nix, supra.*

Jensen contends that his due-process rights were violated because he received no written notice of the reasons for the adjustment committee's findings and disposition as required by Right No. 10 of the Inmate's Rights in the Disciplinary Process.

 We find no merit in this contention. In *Wolff v. McDonnell, supra,* the Supreme Court held that due process requires that an inmate involved in a prison disciplinary proceeding must be provided with a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action taken. The written statement protects an inmate from possible collateral consequences based on a misunderstanding of the nature of the original proceeding and from arbitrary action by prison officials. *Wolff, supra.* In order to satisfy due process, this notice must provide a meaningful written statement of the evidence relied on and the reasons for the actions taken. *Dyson v. Kocik,* 689 F.2d 466 (3d Cir.1982). A meaningful written notice is given and minimum due-process requirements are satisfied when the statement of reasons is sufficient to enable the reviewing body to determine the nature of the proceedings and the grounds for the adjustment committee's decision. These requirements are satisfied in the instant case.

 The adjustment committee's findings, disposition, and reasons for both are written on part of the same incident report form which was used to notify Jensen of the claimed rules violation. The committee found that Jensen had committed the prohibited act of fighting with another person as charged, and recommended that he lose one month of good time, lose 30 days' gym privileges, and spend 15 days in disciplinary segregation with 10 days suspended and one day credit given for time spent in discipli-

himself or others or poses a threat to the security of the facility. The reasons for the placement of an individual in pre-hearing detention must be recorded in a logbook which in turn

must be reviewed by the warden or deputy warden within 72 hours of the inmate's detention. Inmate Handbook, pp. 63–64 (Feb. 1982).

nary segregation immediately following the fighting incident. The report form states that the committee's findings were based upon the information included in the incident report, the inmate's testimony, and the gym officer's testimony. The incident report included a written description of the fighting incident signed by the gym officer and Jensen's comments describing how he "chastised this young man with a 240 pound open hand slap to the right side of his jowls, . . ." Although more detailed findings could have been prepared, the form was nonetheless sufficient to inform Jensen of the evidence relied on by the factfinders in reaching their decision to take disciplinary action.

Jensen's final contention is that the penalty imposed upon him was in excess of the penalty listed for a rule violation in the prison recreation building. The rule Jensen would have us refer to is Rule No. 14 of the Rules and Regulations for Recreation Building. This rule, in its entirety reads:

"14. During basketball games we ask that you conduct yourself in a mannerly way. Please refrain from complaining to the referees (mainly swearing). Fighting will bring 30 days loss of recreation."

It is apparent that the foregoing rule applies to fighting among inmates during games in the recreation building and not to a fighting incident unrelated to prison recreational activities. To interpret the rule otherwise would create a haven in the prison recreation building where inmates could engage in fighting activities and be subject to a lesser penalty than if the fight had occurred elsewhere at the penitentiary. Such a position is untenable. Because Jensen engaged in fighting with another inmate in violation of penitentiary rules, he could be punished accordingly.

Because there was no denial of Jensen's due-process rights in the penitentiary disciplinary proceeding, the district court properly denied Jensen's application for post-conviction relief. Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.