**The STATE of Texas, Appellant,**

v.

**Joel Ray BAIZE, Appellee.**

**No. 07–96–0278–CR.**

Court of Appeals of Texas, Amarillo.

June 6, 1997.

Office of the Attorney General, M. Andrew Stover, John S. Klassen, Austin, for appellant.

Hurley, Sowder & Reyes, Daniel W. Hurley, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

QUINN, Justice.

The State of Texas appeals from a judgment convicting Joel Ray Baize (Baize) of criminally negligent homicide. Through its sole point of error, the State argues that the trial court illegally sentenced Baize by permitting him to change his election regarding the assessment of punishment. In response, Baize alleges that we have no jurisdiction over the appeal. We agree with Baize and dismiss.

### Background

Prior to voir dire, Baize elected to have the jury assess punishment. After being found guilty, however, he sought to withdraw his previous election. The trial court granted the request over the State's objection, released the jury from further service, and assessed punishment itself. Furthermore, the punishment levied consisted of sixty days imprisonment and a fine of $500.00. Thereafter, judgment was entered and sentence pronounced reflecting the punishment assessed.

## Point of Error

All concede that the trial court was not authorized to do what it did. Originally opting to have the jury assess punishment, Baize could not change his election without the State's consent. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (Vernon Supp.1997); *Stephens v. State*, 522 S.W.2d 924, 927 (Tex. Crim.App.1975). Since the State refused to consent, the trial court had to abide by Baize's initial election. *Id.* Thus, the real question before us is not whether the court erred but whether we have the jurisdiction to do anything about it. The State argues that we do since the sentence was allegedly illegal for purposes of article 44.01(b) of the Texas Code of Criminal Procedure. So, we turn to art. 44.01(b) to resolve the dispute.

Though increasing numbers question why, it remains beyond gainsay that the State's authority to appeal in a criminal matter is quite limited. Indeed, prior to 1987, that authority was non-existent. *State v. Roberts*, 940 S.W.2d 655, 657 (Tex.Crim.App.1996); TEX.CODE CRIM. PROC. ANN. art. 44.01 (Vernon 1979) (expressing the content of art. 44.01 before amendment). Yet, in 1987, both the State's legislature and populace declared that the right to appeal should be extended to the State in a few instances. The instance involved here appears in paragraph (b) of article 44.01. According to that provision, "[t]he state is entitled to appeal a sentence in a case on the ground that the sentence is illegal." Thus, whether jurisdiction over this cause exists depends upon whether the trial court's action constituted an illegal sentence. We hold that it did not.

### 1. What is an Illegal Sentence

■ In construing the scope of art. 44.01(b), our task is to discover and effectuate the legislative intent or purpose underlying the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). This requires us to focus upon the literal language of the provision and "discern ... [its] fair, objective meaning." *Id.* "In other words, we focus on the meaning a typical legislator would have

given the specific language of the statute at the time of its enactment." *State v. Muller*, 829 S.W.2d 805, 808 (Tex.Crim.App.1992). And, "if the meaning of the statutory text, *when read using the established canons of construction relating to such text*, ... should have been plain to the legislators ... we ordinarily give effect to that plain meaning." *Boykin v. State*, 818 S.W.2d at 785 (emphasis added).[1]

■ Next, of the many "established canons of construction," one obligates us to presume that the aforementioned typical legislator had "complete knowledge of the existing law and [acted] with reference to it." *Acker v. Texas Water Commission*, 790 S.W.2d 299, 301 (Tex.1990); *see Moore v. State*, 868 S.W.2d 787, 790 (Tex.Crim.App. 1993) (assuming that the legislature is aware of preexisting judicial opinions in a particular area when legislating in that area). Another canon dictates that words be construed in context according to the rules of grammar and common usage, TEX. GOV'T.CODE ANN. § 311.011(a) (Vernon 1988), while another declares that words or phrases which have acquired a technical or particular meaning by legislative definition or otherwise be accorded that meaning. *Id.* at § 311.011(b); *State v. Roberts*, 940 S.W.2d at 658; *State v. Howard*, 908 S.W.2d 602, 604 (Tex.App.—Amarillo 1995, no pet.).

■ Here, as previously mentioned, art. 44.01(b) speaks in terms of an illegal sentence. Prior to 1987, that concept was used in relation to ordering punishment outside the range allowed by law. For instance, in *Harris v. State*, 670 S.W.2d 284 (Tex.App.— Houston [1st Dist.] 1983, no pet.) question arose as to whether the punishment levied by the jury "exceeded the statutory maximum." *Id.* at 285. Apparently, the jurors had assessed the defendant with both a fine and incarceration when statute simply authorized incarceration. According to the court in *Harris*, that "constitute[d] an *illegal sentence*" which could not be enforced. *Id.* at 285 (emphasis added). In other words, the

---

1. Though the plain meaning is "ordinarily" adopted, it will not be when doing so creates ambiguity or achieves an absurd result. *State v.* *Edmond*, 933 S.W.2d 120, 124 (Tex.Crim.App. 1996); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

law prior to enactment of art. 44.01(b) indicated that an illegal sentence was one falling outside the range of punishment authorized by statute. Consequently, we must presume that the typical legislator not only knew but also acted in reference to this in 1987.[2]

Other research into the concept of an illegal sentence also disclosed that the phrase has a technical meaning which enjoys common, widespread usage. *Harris* itself is one example of that as is the United States Supreme Court's opinion in *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). In the latter, the Supreme Court was asked to determine whether denying a defendant allocution constituted an illegal sentence under Federal Rule of Criminal Procedure 35.[3] The high court noted that the error did not "inherently result[ ] in a complete miscarriage of justice"; nor did it implicate either the court's jurisdiction or a fundamental constitutional right. *Id.* at 428, 82 S.Ct. at 471, 7 L.Ed.2d at 421. Furthermore, " '[t]he punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect.' " *Id.* at 430, 82 S.Ct. at 472, 7 L.Ed.2d at 423 (emphasis added). Consequently, the error did not amount to an illegal sentence. *Id.*

As can be seen, the Supreme Court, as early as 1964, defined an illegal sentence in the same way as did the Houston Court of Appeals in *Harris*. Similarly, in *United States v. Johnson*, 988 F.2d 941 (9th Cir. 1993), the United States Court of Appeals for the Ninth Circuit held that an illegal sentence contemplated one which was not authorized by the judgment of conviction, was in excess of the permissible statutory penalty for the crime, or was in violation of the Constitution. *Id.* at 943. So too did the Court of Appeals for Alaska, in *Dunham v. City and Borough of Juneau*, 790 P.2d 239, 240 (Alaska.Ct.App.1990), view it to mean a

sentence that contravened an applicable statute such as when the sentence falls short of the statutory minimum, *id.* at 240, as did the Florida Supreme Court in *Davis v. State*, 661 So.2d 1193 (Fla.1995) (stating that an illegal sentence can be addressed at any time and is one that exceeds the maximum period set forth by law), the Kansas Supreme Court in *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993) (stating that an illegal sentence is one imposed by a court without jurisdiction, one which does not conform to statutory provision in either term or character, or one which is ambiguous), the Louisiana Court of Appeals in *State v. Moore*, 640 So.2d 561, 563 (La.Ct.App.1994) (interpreting an illegal sentence to be one not authorized by the law such as when it is outside the statutory range), the Supreme Judicial Court of Massachusetts in *Commonwealth v. McGuinness*, 421 Mass. 472, 658 N.E.2d 150 (1995) (stating that an illegal sentence is one not permitted by law for the offense committed which includes sentences premised on a major misunderstanding by the judge as to the legal bounds of his authority), the Supreme Judicial Court of Maine in *State v. Brooks*, 589 A.2d 444 (Me.1991) (stating that an illegal sentence is one which is not authorized by law such as when the court imposes a sentence in excess of the maximum periods authorized by statute), the Supreme Court of North Dakota in *State v. Trieb*, 516 N.W.2d 287 (N.D.1994) (stating that an illegal sentence is one in excess of statutory authority or outside the court's jurisdiction), and the New Mexico Court of Appeals in *State v. Harris*, 101 N.M. 12, 677 P.2d 625, 627 (App. 1984) (stating that an unauthorized sentence is an illegal sentence).

The common thread running through *Hill*, *Harris*, and the others cited above is the notion that an illegal sentence involves more than procedural error. Rather, according to the foregoing cases, the sentence must either trammel 1) jurisdictional limitations, that is,

---

2. Sadly, as pointed out by both parties in their supplemental brief, legislative history sheds little light on what our representatives in Austin actually thought when incorporating the idea of an illegal sentence into art. 44.01(b).

3. At the time, Federal Rule of Criminal Procedure 35 read that "[t]he court may correct an *illegal sentence* at any time and may correct a sentence *imposed in an illegal manner* within the time provided herein for the reduction of sentence." (Emphasis added).

fall outside the range of punishment allotted by statute, *e.g., Hill, Harris, Davis, Ruff, Moore, McGuinness, Brooks,* and *Trieb,* or 2) fundamental constitutional principles. *E.g., Hill v. United States, supra.* We find this uniform and technical construction of the phrase quite persuasive and, therefore, conclude that an illegal sentence is, at the very least, one which the court had no jurisdiction to levy or one which violates a fundamental constitutional right.[4]

### 2. Is Violation of art. 37.07, § 2(b) an Illegal Sentence

 Next, in comparing the definition of an illegal sentence with the circumstances at bar, we conclude that the trial court's action did not result in an illegal sentence. First, art. 37.07, § 2(b) deals with *who* may assess punishment, not with *what* amount to assess or its execution once assessed. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (stating that it is the responsibility of the judge to assess punishment unless 1) probation may be awarded and the defendant requested probation and 2) the defendant previously opted to have the jury assess punishment). Nor does it involve execution of the punishment eventually levied. Second, no one here contends that the sentence actually assessed fell outside the range set by statute.

 Third, nor can it be said that the assessment of punishment in a manner contrary to art. 37.07, § 2(b) is jurisdictional. One need only read *Dickson v. State,* 492

S.W.2d 267 (Tex.Crim.App.1973) to realize this. Not only did the Texas Court of Criminal Appeals there declare that a violation of the statute is not "inherently detrimental" (reminiscent of the United States Supreme Court's concerns in *Hill* ), but it also held that same may be waived. *Id.* at 270. Yet, jurisdictional error can never be waived. So, logically, contravening art. 37.07, § 2(b) cannot be jurisdictional.

 Finally, ignoring § 37.07, § 2(b) does not implicate any fundamental constitutional right. This is so because one has no constitutional right to have a jury assess punishment. *Martin v. State,* 753 S.W.2d 384, 389 (Tex.Crim.App.1988); *Easton v. State,* 920 S.W.2d 747, 750–51 (Tex.App.—Houston [1st Dist.] 1996, no pet.).

In sum, the act of which the State complains fails to satisfy the indicia of an illegal sentence. This being so, we have no jurisdiction to entertain the appeal.[5]

Accordingly, we dismiss the appeal for want of jurisdiction.

---

4. Additionally, the interpretation we give to art. 44.01(b) comports with the definition of "sentence" found in other Texas statutes and judicial opinions. For instance, a sentence is that part of the judgment which orders the punishment to be executed "in the manner prescribed by law." TEX.CODE CRIM. PROC. ANN. 42.02 (Vernon Supp. 1997). That is, it not only empowers those in charge to punish the convicted individual but also declares the manner and extent of that punishment. *Williams v. State,* 675 S.W.2d 754, 759 (Tex.Crim.App.1984). From this one can see that a sentence encompasses the amount of punishment levied and *its* execution. So, for it to be "illegal," that is, against or unauthorized by law, H. Black, *Black's Law Dictionary* p. 673 (5th ed.1979), it follows that the amount of punishment or its mode of execution must somehow be unauthorized. Similarly, sentences unauthorized by the law have historically been held void in Texas. *Fullbright v. State,* 818 S.W.2d 808,

809 (Tex.Crim.App.1991); *Heath v. State,* 817 S.W.2d 335, 339 (Tex.Crim.App.1991). The most logical reason for this is that punishment of such ilk lies outside the trial court's jurisdiction.

5. This is not to say that we are insensitive to the State's position. The limitations inherent in the government's right to appeal do raise concern. These limitations potentially imbue trial judges with the ability to, at times, ignore the law without fear of redress. *See State v. Moreno,* 807 S.W.2d 327, 329 n. 3 (Tex.Crim.App.1991) (noting this to be the stimulus which induced the legislature to grant the State a limited right to appeal in 1987). Yet, as alluded to in *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991), we cannot create where the legislature has yet to enact. *Id.* Thus, any relief must come from those elected to fill our state house, senate, and governor's mansion.