JUSTICE TRIEWEILER
dissenting.
¶37 I dissent from the majority’s conclusion that Campbell could, by contract, waive his statutory right to good time credit earned wliile *54 engaged in prison work and training activities.
¶38 I can fathom no explanation for the majority’s decision other than to satisfy the Department of Corrections’ insatiable desire to keep its overcrowded prisons filled beyond capacity and to avoid more petitions like Campbell’s.
¶39 This Court has previously held that the statute pursuant to which Campbell claims a right to good time credit for time served at boot camp creates a liberty interest in good time credit. In Orozco v. Day (1997), 281 Mont. 341, 354, 934 P.2d 1009, 1016, we held that:
This statute mandated rules granting good time for work activity as a credit on an inmate’s sentence. Consistent with this statute, the Department adopted Policy No. 505, which required that good time allowances provide a credit on the inmate’s sentence as imposed by the court....
By these legislative and administrative actions, the State created a right to good time credit as a direct credit to inmates’ sentences. As in Wolff [Wolff v. McDonnell (1974), 418, U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951] the good time provisions contained in both § 53-30-105, MCA (1993), and Policy No. 505 directly affect the duration of inmates’ confinement at the MSP. Applying the Sandin/Wolff due process analysis, we conclude that the State had created an interest of real substance sufficiently embraced within Fourteenth Amendment “liberty” so as to entitle Orozco to due process procedures appropriate under institutional circumstances. See Sandin, 515 U.S. at 483, 115 S.Ct. at 2300; Wolff, 418 U.S. at 557, 94 S.Ct at 2975 ....
¶40 We have repeatedly held that statutory benefits provided on the basis of public policy cannot be waived contractually by any individual. Our most recent decision was Rothwell v. Allstate Ins. Co., 1999 MT 50, 293 Mont. 393, 976 P.2d 512.
¶41 In Rothwell the plaintiff, insurance agent, brought an action to require her employer, Allstate Life Insurance Company, to indemnify and reimburse her for office and other employment-related expenses incurred in the course and scope of her employment. Section 39-2-701(1), MCA (1995), requires that “an employer must indemnify his employee ... for all that he necessarily expends or loses in direct consequence of the discharge of his duties as such or of his obedience to the directions of the employer ....”
¶42 Allstate contended that Rothwell had waived her statutory right to indemnification because of provisions in Allstate’s standardized employment agreement which provided that neighborhood office agents are responsible for a portion of their own office expenses. Allstate relied on § 1-3-204, MCA, which provides:
Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.
¶43 We held that whether or not the right to indemnity could be waived depended on whether the statutory obligation to indemnify was established for a public reason. We held that it was and after citing a *55 long line of cases which invalidated agreements to waive statutorily-provided benefits, we held the agreement in Rothwell’s contract was also invalid because it violated public policy.
¶44 Likewise in this case, the good time credit provided by statutory law in 1993 was enacted for a public purpose and protected more than just Campbell. It operated for the benefit of prison administrators to encourage good behavior and it operated for the benefit of the prison population as a whole to enhance their safety and security and to provide incentives for work and training activity and good behavior.
¶45 The public purpose of good time credits is evident from the legislative history of amendments to the good time statute. In 1983 it was pointed out that good time is an essential incentive to move prisoners through the prison system and is an important tool in managing state institutions. Hearing on S.B. 220 Before the Senate Judiciary Comm., 48th Legis. 2 (Mont. 1983) (statement of Curt Chisholm, Executive Director of the Dept. of Inst.).
¶46 In 1991 it was noted that good time credits have a positive effect on prison overcrowding. Hearing on H.B. 379 Before the House Judiciary Comm., 52nd Legis. 3 (Mont. 1991) (statement of Rep. Hasten).
¶47 In 1993 the Legislature was told that good time credits allow the Department of Corrections to control the prison population while working to downsize prisons, Hearing on H.B. 685 Before the Senate Comm, on Finance and Claims, 53rd Legis. 18-19 (Mont. 1993) (statement of Rep. Ed Grady), and in 1995 the DOC advised the Legislature that an additional purpose of good time credit is to encourage inmates to participate in rehabilitation programs. Hearing on H.B. 356 and 357 Before the House Judiciary Comm. 54th Legis. 19 (Mont. 1995) (statement of Rick Day, Director of Dept. of Corrections and Human Services).
¶48 It is no more subject to contractual waiver than those benefits such as workers compensation, unemployment benefits, or overtime hourly wage protection, which are statutorily provided to employees.
¶49 The only other court which to my knowledge has decided this issue is the Supreme Court of North Dakota in Ostafin v. North Dakota (1997), 564 N.W.2d 616. In that case Ostafin was sentenced to two concurrent seventeen-year sentences as part of a plea agreement in which he waived the right to have his sentence reduced for “good time” which was provided pursuant to North Dakota statute. He filed a motion to correct his sentence based on his contention that his agreement to waive good time credit was illegal. The trial court agreed and the state appealed. The North Dakota Supreme Court affirmed the trial court based on reasoning identical to that employed by our Court in its Rothwell decision. The North Dakota court stated:
The legal maxim, “a law established for public reasons cannot be contravened by a private agreement,” supports our decision ... that a defendant cannot waive a right the legislature has given to prison administration to utilize for the purpose of inducing good behavior in prison. M.D.C.C. § 31-11-05(4). Furthermore, there *56 can be no waiver of statutory rights if such waiver would be against public policy. M.D.C.C. § 1-02-28. The legislative purpose of good time is to improve prison behavior and thereby improve overall prison morale and well being.”
564 N.W.2d at 617.
¶50 The North Dakota court got it right. The majority is clearly wrong. No one in the majority should ever tell another North Dakota joke.
¶51 The majority’s effort to avoid the effect of our Rothwell decision illustrated in the current context by the North Dakota decision and in the process to erode the important public protection afforded by § 1-3-204, MCA, is an exercise in result-oriented sophistry.
¶52 In paragraph five of its opinion, the majority notes that by statute all applicants to boot camp are required to read and sign a written explanation of program goals, objectives, rules and criteria and that Campbell did so. The majority states as part of the same sentence that he acknowledged he would be ineligible for good time credit as if his acknowledgment was part of the same statutory requirement. It was not. There is no statutory requirement that Campbell waive his right to good time credit as a condition to admission to the boot camp program. Furthermore, we have previously held that a state agency cannot accomplish by administrative rule what is in contravention of statutory law.
¶53 In an effort to avoid the plain language of § 1-3-204, MCA, the majority goes to great lengths to define “public reason” by citing examples of cases where a public reason has been found and then concluding that because the facts in this case are dissimilar, good time credit must not have been enacted for a public purpose. For example, the majority notes that minimum wage laws, overtime compensation laws, and laws which permit redress for sexual harassment or employment discrimination have all been found to have been enacted for a public reason. Therefore, “public reason” must be limited to those cases which protect people with little economic, social or political power from those with greater power. The majority then concludes that because the good time allowance statute did not appear to be motivated by the “public reasons” underlying our previous decision (i.e., “it was not enacted to protect inmates from prison administrators or to somehow put these groups on a more equal footing”), good time credits must not have been enacted for a public reason within the meaning of § 1-3-204, MCA. The majority opinion follows a tortuous course to avoid the obvious.
¶54 The obvious facts are that control of the prison population, downsizing prison populations, reducing prison overcrowding, motivating prisoners to work and enroll in rehabilitation programs, and managing state prisons are all publicly identified purposes for the good time credit law and are all clearly “public reasons” for- the good time credit provided by statute.
¶55 The majority attempts to distinguish Ostafin on the grounds that Ostafin’s waiver was part of a plea agreement rather than a boot camp agreement and that Ostafin’s right to good time credit for some reason *57 did not belong to him while Campbell’s right to good time credit does belong to him. How that distinction was made is not explained. No explanation is possible. Ostafin and Campbell waived the benefit of the exact same law which was enacted in both states for the exact same purpose. As previously explained, good time credit in both states benefits the individual, the administrators of prisons, the prison population as a whole, and the general public who have every interest in rehabilitating prisoners and passing them through the system in as little time as possible with as little expense as possible. The right is neither Campbell’s to waive nor the prison administration’s to waive. ¶56 As far as I can tell, the only significant differences between Campbell’s situation and Rothwell’s are that Rothwell had not been convicted of a crime, was represented by counsel, and had an amicus brief filed on her behalf by the Montana Trial Lawyers Association. ¶57 Campbell has no attorney. No interest group cares about his situation and speaks out on his behalf. He has no constituency. He is part of a growing population of faceless, powerless, voiceless, warehoused people whose rights are paid lip service but rarely taken seriously by the institutions responsible for their custody. The only check on that indifference is the judiciary. Sometimes the system works. (See e.g., MacPheat v. Mahoney, 2000 MT 62, 299 Mont. 46,997 P.2d 753.) Sometimes it does not. (See e.g., Sebastian v. Mahoney, 2001 MT 88, 305 Mont. 158, 25 P.3d 163.) That’s too bad. When the rights of even the most disrespected among us are ignored, all of society is diminished.
DATED this 7th day of August, 2001.
JUSTICE NELSON joins in the foregoing dissent.
I concur with JUSTICE TRIEWEILER’S foregoing dissent, except that I agreed with the majority in Sebastian.