

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00208-CR

_____

JOHN WESLEY WALSH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,971

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A jury assessed life imprisonment for John Wesley Walsh after convicting him of burglary of Stan Burks' residence, enhanced by prior convictions of murder and burglary of a building. Walsh appeals the trial court's judgment on the grounds that insufficient evidence supported his conviction, his counsel rendered ineffective assistance, and the trial court erred in allowing the jury to assess punishment. In affirming the trial court's judgment, we find the evidence sufficient, conclude counsel was not ineffective, and find no reversible error with respect to jury assessment of Walsh's punishment.

## I. Sufficient Evidence Supported Walsh's Conviction

Burks' son returned home from school to find "broken glass on the floor" from windows in the kitchen, back door, and dining room. He called his mother and waited outside of the residence for police to arrive. An inventory of missing items included missing knives, firearms, jewelry, a driver's license, social security card, debit card, other personal items, and cash taken from three bedrooms.

By the broken and jagged-edged kitchen window, officers noticed three drops of "blood which was located on the frame inside the residence." The blood was sent to a DNA laboratory, and was matched to Walsh's profile contained in the Combined DNA Index System (CODIS), a national database that stores known DNA profiles to generate leads in unsolved cases. Based on the laboratory report, officers secured a warrant allowing them to obtain a buccal swab from

Walsh. The laboratory compared the DNA from the blood and cheek samples and confirmed Walsh was the contributor of the blood obtained from Burks' residence.

Walsh contends this evidence was insufficient to establish he committed burglary of a habitation. We disagree.

We will review the legal and factual sufficiency of the evidence supporting Walsh's conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We defer to the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we presume that the jury resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). The verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Walsh was charged by indictment with burglary of a habitation; the specific charge was that with intent to commit theft he entered a habitation, without the effective consent of the owner, Burks. Burglary may be committed by three different means under the Texas Penal Code. *DeVaughn v. State*, 749 S.W.2d 62, 64–65 (Tex. Crim. App. 1988). Here, Walsh was charged with violating the first alternative means as set out in the statute. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003). When the State alleges one of several alternative manner or means of committing the crime, that alternative must be proved by the State and our review under the hypothetically correct jury charge must be guided by the requirements of the alleged statutory alternative. *See Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring); *Mantooth v. State*, 269 S.W.3d 68, 74 (Tex. App.—Texarkana 2008, no pet.). Here, a hypothetically correct charge would require the jury to find, beyond a reasonable doubt, that: (1) Walsh; (2) without effective consent of the owner; (3) entered a habitation; (4) with intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1). "Theft" is the unlawful appropriation of property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a)

(Vernon Supp. 2009). A person acts with intent "with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). In a burglary prosecution, the specific intent to commit theft may be inferred from the circumstances. *Hawkins v. State*, 467 S.W.2d 465, 466 (Tex. Crim. App. 1971).

The evidence shows that the Burks home was forcibly entered and their property was taken. It is undisputed that Walsh's blood was found inside Burks' residence next to the broken kitchen window.[1] None of the Burks family knew Walsh and had never seen him before. Because there was no occasion for Walsh's presence inside of the home, it was reasonable for the jury to infer that the blood must have been left during the burglary.[2] The presence of three broken windows in the back of the home indicated a knowing or intentional intrusion into the residence. Since the Burks family did not know Walsh, he could not have obtained their consent for entry. The inventory of stolen items established that appropriation of the Burks property occurred. Intent to deprive the Burks of their property could have been inferred by the jury given these circumstances. Officer James Norred pointed out to the jury that the broken windows were all in "the back which would mean that whoever had burglarized the home, they were trying to hide."

---

[1]According to expert testimony, the probability of an unrelated white male Caucasian being selected was one in 16.74 quintillion or 2.57 billion times the world's population.

[2]"[T]he fingerprints of an accused, which necessarily must have been made at the time of the burglary, are sufficient to sustain a burglary conviction without further evidence of identification." *Phelps v. State*, 594 S.W.2d 434, 435 (Tex. Crim. App. [Panel Op.] 1980); *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.); *Villarreal v. State*, 79 S.W.3d 806, 811 (Tex. App.—Corpus Christi 2002, pet. ref'd). Walsh agrees that "[t]he blood DNA comparison may prove beyond a reasonable doubt Walsh's identification."

Considering the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of burglary of a habitation beyond a reasonable doubt.

The only contrary evidence Walsh sought to introduce was an allegation that another person by the name of Clifford Edward Pruitt may have burglarized the home. Pruitt testified that he did not know Walsh prior to their meeting in jail and that he had never seen the Burks residence. Affording the jury the deference it is due, we cannot conclude its verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence.

We find that legally and factually sufficient evidence supported the jury's verdict and overrule Walsh's first point of error.

## II. Walsh Did Not Receive Ineffective Assistance of Counsel

The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order to prevail on a claim of ineffective assistance of counsel, Walsh must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The *Strickland* test "requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 391 (2000). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. This requirement

can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second *Strickland* prejudice prong requires a showing that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88; *see also Imoudu*, 284 S.W.3d at 869. "Reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

In an *Anders*[3]-style briefing format, Walsh raises several issues relating to this point of error and then proceeds to explain why they have no merit. For completeness, the brief states:

> 1.    He was initially brought into the courtroom, handcuffed and shackled in the presence of the jury panel. His lawyer failed to object. There is no record of this even though apparently the Trial Court quickly corrected this situation. . . .
>
> 2.    He was not allowed to help select the jury and has no idea when the jury was selected. The record reflects that Walsh was present during the jury voir dire.
>
> 3.    Walsh contends that he did not sign the judgment of conviction . . . . This claim is groundless.
>
> 4.    Walsh contends the docket sheet was altered. This is ministerial concerning the case number and the Trial Court's motion. It has nothing to do with any misconduct and does not give rise to any error at trial.

---

[3]*Anders v. California*, 386 U.S. 738 (1967).

5.      Although Walsh contends [that] he had no opportunity to participate in the jury selection, the Reporter's Record reflects his presence during voir dire and he complains that the jury panel list sheet had the wrong cause number on it. His attorney did not object. These issues were cured along with Defendant's motions being incorporated into the correct case file. . . .

6.      Walsh contends that he wanted the Trial Court to access [sic] punishment, but the jury did. There is no filed election for jury assessment of punishment and trial counsel made no objection. This is treated in this brief in a separate point. . . .

7.      Walsh contends that his trial attorney improperly disclosed to the State that it had not yet enhanced the punishment. . . . There is no record to support Walsh's contention, other than his word vs. that of his trial attorney and the State's attorney denying same.

8.      Walsh contends the State in a prior pre-trial hearing refused to honor its plea bargain agreement. There is no record made or available of this matter. . . .

9.      Walsh complains of his trial attorney failing to object sufficiently enough. The record reflects that trial counsel could have objected to some leading questions by the State and the trial counsel should have objected to the inclusion of the law of parties instruction into the charge and should have caught the punishment election mix-up.

10.     Walsh contends he was not allowed to show that Eddie Pruitt committed the offense, that Mr. Byrd (the prosecutor) put words in his mouth during the punishment phase, and that his trial attorney did not ask to poll the jury even though Walsh wanted it done. . . . [T]he record does not indicate Walsh's personal contention about polling the jury. . . . the Presiding Juror acknowledged that the punishment verdict was unanimous. The other objections concern answers of Walsh as a witness on cross examination and the lack of proof concerning Eddie Pruitt of which there is no evidence.

11.     Lastly, Walsh contends that the trial attorney's closing argument at punishment, "re: not asking for the 25 years minimum" was evidence of ineffective

assistance. . . . This is a question of context more than substance when a defendant is found guilty.

Allegations of ineffectiveness must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). The brief affirmatively admits the record does not support claims 1, 2, 5, 7, and 8. We will not address them. Since the brief suggests Walsh's complaints 3, 4, 10, and 11 are without merit, and we agree, we will not address each of them.

As to complaints 9 (failure to make certain objections) and 6 (failure to object to jury assessment of punishment), no caselaw or authority is provided in support. A point of error that is conclusory and cites no authority presents nothing for review. *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004). If a point of error is inadequately briefed, we will not address it. *See* TEX. R. APP. P. 38.1; *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992). Further, the record is silent as to any reasons explaining trial counsel's actions and we will not so speculate. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Numerous reasons can be imagined as to why specific objections were not made. As we will discuss in connection with the next point, it appears from counsel's statements during voir dire examination that Walsh and his attorney had decided it was best to submit the punishment issue to the jury. Absent a record revealing trial counsel's strategy or motivation, Walsh cannot overcome the strong presumption that counsel's actions fell within the wide range of reasonable professional assistance. *Id.*

We overrule all of Walsh's ineffective assistance points of error.

**III.    Allowing the Jury to Determine Punishment Did Not Result in Reversible Error**

9

Walsh filed a written election asking the trial court to assess punishment several months before trial. Regardless of that motion, because Walsh did not elect for the jury to assess punishment "in writing before the commencement of the voir dire examination of the jury panel," it was the judge's responsibility to do so. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (Vernon Supp. 2009). Therefore, Walsh contends the trial court was without authority to hold the punishment hearing before the jury.

This case mirrors cases previously decided by the Texas Court of Criminal Appeals. *Fontenot v. State*, 500 S.W.2d 843, 844 (Tex. Crim. App. 1973); *Dickson v. State*, 492 S.W.2d 267 (Tex. Crim. App. 1973). Here, counsel did not object to assessment of punishment by the jury. *Dickson* asked "[i]s there anything inherently detrimental in the jury assessing punishment which appellant could not waive by his failure to object to such procedure? We think not." *Dickson*, 492 S.W.2d at 270. Noting that "a defendant can waive statutory rights with regard to assessment of punishment," the court concluded "[a]lthough the jury was not authorized to assess punishment under Article 37.07, Sec. 2(b) . . . ., in the instant case, we conclude that in view of appellant's failure to object to such procedure, no reversible error is presented." *Id.*; *see Fontenot*, 500 S.W.2d at 844; *see also Gibson v. State*, 549 S.W.2d 741, 743 (Tex. Crim. App. 1977); *State v. Baize*, 947 S.W.2d 307, 311 (Tex. App.—Amarillo 1997), *aff'd*, 981 S.W.2d 204 (Tex. Crim. App. 1998).

Here, during voir dire, the court stated to the prospective jury panel "[i]n this particular trial the defendant has chosen to have the jury assess his punishment." Walsh's counsel questioned the panel about punishment theories, and did not object when the jury was seated in the punishment phase. Further, before submitting the punishment charge to the jury, counsel was asked for objections and no objection was made on this basis. Counsel continued to present the punishment case to the jury and did not complain to the trial court of the alleged error in Walsh's motion for new trial or otherwise. In accord with established precedent, we conclude Walsh failed to preserve the issue of whether the trial court erred in allowing the jury to assess punishment. Therefore, we overrule Walsh's last point of error.

## IV. Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:      May 27, 2010
Date Decided:        May 28, 2010

Do Not Publish